[No. 12274. Department One. February 6, 1915.]

E. J. Boyce, *as Hoquiam Retail Lumber Office, Appellant,* v.
A. M. Campbell, *as Receiver etc., Respondent.*[1]

Corporations—Representation—Agents—Contracts —Authority
of Agent. A trust company authorized a director to incur certain
expenses in the alteration of certain portions of its building, and
is liable therefor, where it appears that, at a meeting of the board,
the director was requested to present plans and an estimate of the
cost, and when this was done about two weeks later, at another
meeting, he was·authorized to go ahead, the trust company assum-
ing the expense, which it approved and paid in excess of the esti-
mates, and the only action taken with reference to a demand for
the balance was to postpone action until a day certain, no denial of
liability being made prior to the appointment of a receiver; and it
is immaterial that the director had a lease of other portions of the
building for hotel purposes, the alterations in question relating to
portions of the building not leased to him.

Appeal from a judgment of the superior court for Chehalis
county, Irwin, J., entered March 17, 1914, upon findings

[1]Reported in 146 Pac. 158.

in favor of the defendant, in an action on contract, tried to the court.  Reversed.

*Morgan & Brewer*, for appellant.

*C. W. Hodgdon*, for respondent.

Morris, C. J.—Action to recover the balance claimed as due upon a purchase of lumber, used in alterations to the building known as the Hotel Grayport, at Hoquiam.  The Hoquiam Trust Company, the owner of the building, went into the hands of a receiver in November, 1912.  The lumber was furnished between February 2, 1912, and March 27, 1912.  The defense established by the judgment below was that the indebtedness was not created by the trust company, nor chargeable to it but was an indebtedness of C. J. Sims the lessee of the hotel.  Sims became a majority stockholder and director in the trust company in December, 1911, and under a resolution adopted December 11, 1911, he entered into possession of the hotel.  On February 6, 1912, the directors of the trust company, after discussing the necessity for alterations to the store rooms upon the ground floor of the hotel building so as to make them more attractive to prospective tenants, authorized Sims to submit plans and an estimate of the cost at an adjourned meeting.  This adjourned meeting was held on February 19th.  The minutes of this meeting show it was then determined to "assume payment of the necessary expenses of bringing forward the fronts, putting in partitions  .  .  .   at a price not to exceed $1,150."  Sims went ahead with the alterations agreed upon, obtaining lumber from the appellant, and incurring an indebtedness of $485.05.  The account was charged to E. J. Sims, both Sims and appellant explaining this charge by saying that, at the time the account was opened, it was specified it was for the trust company.

Monthly statements were made out and sent to Sims.  These bills were held by Sims until the indebtedness had been nearly

3—84 WASH.

completed, when he took them and delivered them to the respondent at its office. In making the alterations, unforeseen conditions were met with increasing the cost to over $1,900, which amount was paid by the trust company under the resolution of February 19th, upon orders from Sims, including two payments on this lumber account amounting to $134.56. On November 11, 1912, the minutes of the trust company show the following recitals:

"Hoquiam Retail Lumber Company Office bill for balance was presented to the board, but after some discussion the matter was, on motion duly made, seconded and carried by vote of all present, laid on the table until after the 16th day of November, 1912."

Nothing further was done, however, and on November 30th the receiver took charge of the trust company and repudiated the claim.

The responsibility for this indebtedness depends upon whether or not Sims was acting for the trust company under due authorization. It seems to us this is determined in favor of appellants by the action of the trust company, as shown by its minutes of the meetings of February 6th and February 19th. After discussing the advisability of these alterations at the first meeting, Sims was requested to present plans and an estimate of the cost. When this was done he was, at the second meeting, authorized to go ahead, the trust company assuming payment of the necessary expenses which were estimated not to exceed $1,150. That the trust company considered itself the real debtor and bound to pay these bills, is manifest by the fact that it did pay them to the extent of approximately $1,900, including two payments aggregating $134.56 on this account. The last action taken by the trust company in regard to this indebtedness, prior to the appointment of the receiver, was to defer taking action on appellant's demand for payment "until after the 16th day of November, 1912." Even then, there is no repudiation

of the indebtedness, nor denial of the liability. The lower court first held with the appellant, holding that the evidence established that Sims was acting as the representative of the trust company in the purchase of this lumber. Subsequently, upon the consideration of the resolution of December 11, 1911, it was considered that the liability attached to Sims alone. This resolution is as follows:

"On motion duly made by Adams and seconded by Heath, it was voted by unanimous vote of those present, except Sims, as follows: That C. J. Sims be given a lease of the Grayport Hotel property so-called, including building and the furniture and fixtures therein for the term of three months commencing this day, on the following conditions: At a rental of $1 a month with option to take a lease for a series of years, not exceeding five at the end of said three months, at a reasonable rent to be agreed upon by the parties at that time, but if at the end of three months the said Sims shall see fit not to take a lease for a further period, any property that may have been added by him to the hotel outside of his own personal property brought in for the use of himself and family, shall become the property of the said Trust Company and in the event that the said Sims shall lease for a term of years, he shall buy the personal property in the hotel, belonging to the Trust Company which includes, furniture, fixtures, etc., at a price to be at that time agreed upon."

We can see no materiality in this resolution as to the account now before us. Under it Sims made alterations in the hotel portion of the building aggregating $2,000, which he personally assumed. The alterations in question covered by the minutes of February 6th and 19th did not make any changes in the part of the building devoted to hotel purposes, but consisted in bringing out and altering the fronts of the store rooms, with the exception of a barber shop which was provided for out of the hotel lobby. All rent from these store rooms was turned over to the trust company, and it is evident that they were not considered as a part of the building leased to Sims, at least so far as the income derived from the rentals.

Judgment reversed, and cause remanded with instructions to enter judgment as prayed for.

MOUNT, HOLCOMB, CHADWICK, and PARKER, JJ., concur.